UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JOSEPH CLINT WADDELL and his wife
LEIGH ANNE WADDELL

    Plaintiffs,

vs.                                                                                                                       Docket No.:
                                                                                                                      DIVISION:
                                                                                                                      JURY DEMANDED

BRISTOL SURGICAL ASSOCIATES, P.C.
And WELLMONT HEALTH SYSTEM d/b/a
BRISTOL REGIONAL MEDICAL CENTER

    Defendants.

## COMPLAINT FOR PERSONAL INJURIES

Plaintiffs, Joseph Clint Waddell and his wife Leigh Anne Waddell, assert this Complaint for Personal Injuries against the named Defendants and would state as follows.

### I. PARTIES

1. Plaintiffs, Joseph Clint Waddell and Leigh Anne Waddell are citizens of the state of Virginia.

2. Defendant Wellmont Health System d/b/a Wellmont Bristol Regional Medical Center is an active, not-for-profit Tennessee corporation with its principal place of business located at 1905 American Way, Kingsport, TN 37660-5882. Defendant Wellmont Health System d/b/a Wellmont Bristol Regional Medical Center's registered agent for service of process is Gary D. Miller who may be served at 1905 American Way, Kingsport, TN 37660-5882.

1

3. Defendant Bristol Surgical Associates, P.C. is an active for-profit Tennessee corporation with its principal office located at 1 Medical Park Blvd., Suite 250W, Bristol, TN 37620. Its registered agent for service of process is D. Nelson Gwatney, 1 Medical Park Blvd., Suite 250W, Bristol, TN 37620-7431.

4. The Defendant corporations are vicariously liable for the negligent actions of their employees and/or agents under the legal principles of vicarious liability and respondeat superior.

## II. JURISDICTION & VENUE

5. All events which form the basis of this Complaint occurred in Bristol, Sullivan County, Tennessee which is within the Eastern District of Tennessee, Greeneville Divisional Office. Accordingly, this is the proper venue for this lawsuit pursuant to 28 U.S.C. 1391 (b)(1).

6. Jurisdiction is properly situated before this Honorable Court pursuant to 28 U.S.C. 1332 as this matter involves a controversy between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## III. DEMAND FOR JURY

7. Plaintiff demands a jury pursuant to the Sixth Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure.

## IV. GENERAL ALLEGATIONS AND FACTS

8. On November 22, 2016 Plaintiff's counsel delivered a Notice of Intent to Sue letter to the named Defendants in this lawsuit. In response, Plaintiff's counsel received a medical chart of approximately 848 pages in length in January, 2017.

9. On October 31, 2017, in response to a specific inquiry by Plaintiff's counsel, indicating that numerous important lab values were apparently missing or never produced,

2

Case 2:17-cv-00201-JRG-MCLC   Document 1   Filed 10/31/17   Page 2 of 12   PageID #: 2

counsel for Defendant BRMC produced a new medical chart totaling 1,952 bates-stamped pages. The allegations in this Complaint are based upon the original 848 page medical chart.

10. On July 5, 2016 Plaintiff Clint Waddell entered Bristol Regional Medical Center for what was expected to be routine outpatient hernia surgery that would have allowed him to leave the hospital very same day that he arrived.

11. Defendant Bristol Surgical Associates' employee/agent Dr. Glenn Burkitt, a general surgeon, advised Clint Waddell that this hernia surgery was to be a routine procedure with no expected delays or complications.

12. Dr. Burkitt never advised Plaintiff Clint Waddell that one of the potential complications from this routine surgery was severing or injuring the aorta with possible death ensuing. There was never any discussion at all as to any attendant dangers from using a trochar to make the first insertion into his abdomen.

13. At the onset of the hernia repair surgery, Dr. Burkitt negligently perforated and severely injured Clint Waddell's aorta nearly cutting it completely in two. The aorta is a large artery which carries blood to the entire lower portion of the body.

14. As a result of the severed aorta, Clint Waddell began to lose massive amounts of blood and a decision was made to convert the surgery over to an "open procedure" so that the aorta could be repaired. Dr. Collins, a fellow employee of Defendant Bristol Surgical Associates, arrived and successfully repaired the damaged aorta.

15. It is undisputed that Dr. Collins had to clamp off the two separate portions of the aorta in order to successfully repair the nearly-severed aorta. Operative notes indicate that the aorta was "clamped off" from 8:30 AM until 10:34 AM on July 5, 2016, which is a medically

significant period of time. While the aorta remained clamped, there was greatly reduced blood flow.

16. Acute compartment syndrome ("ACS") is a well-known complication that can occur whenever there is decreased blood flow (ischemia) for a significant amount of time during a surgery.

17. It is a well-known rule that when blood supply returns to tissue after a period of lack of oxygen (known as ischemia), the restoration of the oxygen to the affected area may cause the tissue to swell. This is known as post-ischemic reperfusion injury.

18. Fascia is a band of connective tissue that encloses and separates muscles.

19. When tissue begins to swell, the pressure increases because the fascia, which holds and packs the muscles together, cannot expand.

20. The building pressure cuts off the flow of oxygen to the muscle and surrounding tissue. This dangerous increase in pressure and the resultant lack of oxygen supply causes muscle and tissue death unless the fascia is cut open to reduce the overall pressure.

21. Early symptoms of ACS include progressive pain out of proportion to the injury, tense swollen compartments and pain with passive stretching of muscles within the affected compartment as well as eventual numbness and also loss of range of motion.

22. Important clues to the development of ACS include rapid progression of symptoms and signs over a few hours and the presence of multiple findings consistent with the diagnosis in a patient at risk.

23. Close observation and serial examinations in a patient at risk for ACS are of great importance.

24. After the lengthy surgery, Clint Waddell arrived at the ICU of Defendant BRMC Hospital on the afternoon of July 5, 2016.

25. The Defendant Bristol Surgical Associates employees/agents failed to prescribe written orders to BRMC nursing staff advising them to immediately contact the attending physician should Plaintiff Clint Waddell suddenly develop any of the classic symptoms of ACS such as out of proportion pain or pain with passive range of motion stretching.

26. Additionally, the defendant Bristol Surgical Associates employees/agents failed to order the use of intra-compartmental pressure monitoring while Clint Waddell remained intubated.

27. During the night of July 5 and through the morning of July 6, 2016 Clint Waddell would motion to his wife complaining of right lower extremity/foot pain. Clint Waddell even scribbled a note to his wife, who remained by his side, indicating that he wanted a pillow placed under his lower right leg. Clint Waddell's wife also reported to nursing staff around 2:00 A.M. on the morning of July 6, 2016 that her husband looked like a balloon.

28. Dr. Burkitt was at Clint Waddell's bedside at or around 10:30 A.M. July 6, 2016 and told Clint Waddell (in the presence of Client's wife Leigh Anne) : "I am sorry. Its all my fault. You would not be here if it wasn't for me." Additionally, Dr. Burkitt failed to recognize that a critically high lab value for Creatinine Kinase had been recorded at 8:30 AM on July 6, 2016. Medical literature suggests that a CK level in the range of 1,000 to 5,000 suggests the existence of acute compartment syndrome causing muscle death. Clint Waddell's level was recorded in his chart to be 54,120.

29. Clint Waddell was extubated by 10:50 AM on July 6, 2016. He immediately voiced complaints of pain to his right lower leg (right lower extremity) as well as extreme discomfort to his left arm (left upper extremity.)

30. By 12:00 P.M. on July 6, 2016 a BRMC nurse is charting that "pain in his legs not controlled." (Page 579 of BRMC chart.) Another nursing note reflects that pain in his leg is a 9 on a scale of 1-10.

31. At 4 pm on July 6, 2016 nursing notes reveal that Mr. Waddell continued to have right leg pain that was "continuous." Clint Waddell's wife will testify that there was also extreme swelling in Clint Waddell's right leg.

32. Dr. Burkitt appeared at Clint Waddell's bedside at or around 5 P.M. on July 6, 2016 and again admitted to Clint Waddell "I'm sorry, its all my fault. You would not be here if it wasn't for me." Ms. Waddell will testify that she reported to Dr. Burkitt that her husband continued to complaint of more pain and swelling in his right lower extremity and that Dr. Burkitt advised her that "this was normal behavior" for this condition.

33. By 8 PM on July 6, 2016 a nursing note reported that Clint Waddell was reporting "no sensation" in his right lower extremity and that his right lower extremity motor strength had dropped from an earlier 5/5 to a 1/5. There is no evidence that Dr. Burkitt or any attending physician or even the resident was made aware of this significant change in condition at any time thereafter.

34. A 7:25 A.M. July 7, 2016 General Surgery Progress Note by the resident physician noted that she had found Clint Waddell complaining of severe pain in his right lower extremity as well as continued swelling in his left upper extremity. There is no indication that Dr. Burkitt made any attempt to personally assess the right lower leg at this time.

6

35. A 7:35 A.M. July 7, 2016 nursing note confirms decreased sensation to right lower extremity. There is no evidence that this information was relayed to Dr. Burkitt.

36. An 8:30 AM July 7, 2016 nursing note stated that wife was complaining of left upper extremity swelling and that the attending physician (Dr. Burkitt) was paged with no new orders given.

37. At or around 12:00 P.M. Dr. Burkitt finally assessed Clint Waddell in person and Clint Waddell's wife intervened and reminded Dr. Burkitt that her husband continued to have unresolved extreme pain in his right lower leg and foot.

38. Dr. Burkitt called Dr. Collins who then determined that an emergency fasciotomy was required and it occurred later on the afternoon of July 7, 2016.

39. Thereafter on July 12, 2016 Dr. Collins performed a closure of one of the two fasciotomies before Clint Waddell left BRMC and received additional medical care at UVA Hospital in Charlottesville, Virginia where attending physicians were extremely critical of the quality of overall medical care received at BRMC by the defendants in this case. Surgeons in Charlottesville concluded that the fasciotomy performed by Dr. Collins was closed too soon leading to additional muscle death and requiring even more surgeries to correct the underlying problem.

### V. CLAIM FOR VIOLATIONOF THE TENNESSEE HEALTH CARE LIABILITY ACT, f/k/a THE TENNESSEE MEDICAL MALPRACTICE ACT

40. Plaintiff asserts as proof the aforementioned allegations in Paragraphs **1-39** above.

**Allegations Against Bristol Surgical Associates**

41. The Defendant Bristol Surgical Associates, through its employees/agents, deviated from the surgical standard of care for a general surgeon practicing in Sullivan County,

7

Tennessee when Dr. Burkitt negligent severely injured and nearly severed Clint Waddell's aorta during a routine inguinal surgery. The Defendant's agent/employee failed to properly identify what he was cutting before cutting and failed to exercise appropriate skill and judgment. Additionally, the location of the injury, when compared with the area of insertion of the initial trochar, supports a finding of negligence as a prudent and reasonable surgeon would never have "slipped" (as described by Dr. Burkitt to Leigh Anne Waddell) to such a degree given the distance involved between insertion and puncture of the aorta.

42. Defendant's agent Dr. Burkitt told the family of Clint Waddell that he was the actual person involved in inserting the initial trochar. The operative note does not recognize the presence of a surgical resident involved during the July 5, 2016 inguinal hernia repair surgery nor during the subsequent open procedure to reattach the nearly severed aorta.

43. As a result of this otherwise preventable injury, Plaintiff Clint Waddell has suffered avoidable physical pain and suffering, permanent impairment and injury to his lower right leg with permanent loss of sensation and the loss of certain muscles in the right leg which will leave him with a permanent limp, unable to walk normally, and may lead to the eventual amputation of his right leg or the need for future corrective surgeries due to extensive muscle and tissue death. Additionally, Clint Waddell had a massive scar on his chest from the open procedure conversion and permanent scarring on his left arm from caustic Levophed which was inserted intravenously on the operating room table when Plaintiff coded. This Levophed extravasated and caused extensive tissue destruction to Clint Waddell's left arm disfiguring his arm and causing painful massive blistering. The extravasation was not in and of itself negligence as it was done in a sudden attempt to save Clint Waddell's life, however, it was given in an

attempt to correct the error stemming from the nearly severed aorta and thus is part of Plaintiff's damages claim.

44. Additionally, the extensive medical bills incurred at UVA Hospital in Charlottesville, Virginia with the multiple additional surgeries along with the painful and expensive rehabilitation at HealthSouth Rehabilitation Hospital in Bristol, Virginia all resulted from the underlying medical negligence caused by nearly severing Plaintiff's aorta.

45. Additionally, Clint Waddell's wife has suffered a significant loss of consortium as a result of her husband's extensive injuries.

46. The Defendant Bristol Surgical Associates, through its employee/agent, additionally failed to appropriately warn the nursing staff at Bristol Regional Medical Center of potential complications from acute compartment syndrome due to the aorta being clamped for more than 2 hours. The Defendant failed to alert nursing staff to the need for prompt communication should Clint Waddell show signs or symptoms of continuous or unresolved significant pain—especially in areas of his body where there was no underlying injury or cutting involving.

47. Additionally, the Defendant Bristol Surgical Associates, through its employees/agents, failed to recognize that the critically high CK level recorded at or around 830 A.M. on July 6, 2016 certainly suggested the development of acute compartment syndrome. Defendant deviated in failing to recognize a tell-tale clinical sign that should have led to additional testing and assessment. Additionally, at no time thereafter did Defendant attempt to measure the intra-compartmental pressures even after additional nursing entries at 12:00 PM July 6, 2016 documented continued severe pain in the right lower extremity.

9

48. Defendant also deviated in failing to recognize and appropriately treat acute compartment syndrome on the morning of July 7, 2016 after the medical resident charted at 7:25 A.M. that Plaintiff Clint Waddell continued to complain of significant unresolved right lower extremity pain. Defendant failed to promptly measure the intra-compartmental pressure of Clint Waddell's right lower leg/foot, and also failed to consider ordering additional lab results for CK testing that would have confirmed the presence of muscle destruction and possibly signified a surge in such levels consistent with compartment syndrome.

**Allegations Against Defendant Bristol Regional Medical Center**

49. Leigh Anne Waddell told BRMC nursing staff repeatedly on July 5, 2016 and July 6, 2016 and July 7, 2016 that her husband's right lower leg and foot were hurting him. If the proof demonstrates that the BRMC nursing staff were not properly alerting the attending physician to significant changes in Clint Waddell's condition, then Defendant Bristol Regional Medical Center ("BRMC") through its agents/employees deviated from the nursing standard of care.

50. Specifically, there was no evidence that BRMC nursing staff were alerting the attending physician to significant changes in right lower extremity sensation and motor dexterity on the evening of July 6, 2016—specifically at 8 P.M. when nursing notes revealed a significant change in the right lower extremity in "no sensation" reported in the right foot. There is no evidence that the attending physician was made aware of this significant change in condition and such failure to alert the treating physician proximately led to a delay in treatment that caused Plaintiff to suffer extensive muscle damage and tissue death that otherwise would not have occurred.

51. **VI. COMPLIANCE WITH NOTICE OF INTENT AND CERTIFICATE OF GOOD FAITH REQUIREMENT UNDER REVISED TENNESSEE HEALTH CARE LIABILITY ACT, CODIFIED AT TENN. CODE ANN. 29-26-121 AND 29-26-122**

52. On November 22, 2016, Plaintiff's counsel sent an initial formal Notice of Intent to Sue the named Defendants in this case. A separate and additional Notice of Intent to Sue letter naming Dr. Collins individually as an additional potential Defendant was mailed on June 29, 2017. The Affidavit of Mailings attached to this Complaint confirms as such.

53. It has been more than 60 days since the Notice of Intent was delivered to the registered agent for the named Defendants. **Exhibit 1** is a copy of the November 22, 2016 and June 29, 2017 Notice of Intent to Sue letters and proof of service and dated Certificate of Mailing, along with a copy of an Affidavit of Mailing of the Notice of Intent to Sue letter.

54. Plaintiff has completely complied with the requirements of Tenn. Code Ann. 29-26-121.

55. Plaintiff's counsel has also consulted with one (1) or more experts who have provided a signed, written statement confirming that upon information and belief they: (a) Are competent under Section 29-26-115 to express opinion(s) in this case; and (b) Believe, based upon the information available from the medical records concerning the care and treatment of the Plaintiff for the incident(s) at issue, that there is a good faith basis to maintain the action consistent with the requirements of Section 29-26-115.

56. Plaintiff's counsel has been found in violation of T.C.A. Section 29-26-122 zero (0) prior times.

57. Out of an abundance of caution, a signed and completed Certificate of Good Faith that mirrors the information contained in paragraphs 54-56 above is attached as **Exhibit 2.**

## VII. PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, the Plaintiff respectfully prays for the following:

1. That proper process and service issue as provided by law;

2. Plaintiff receive a compensatory award to be determined by a jury in an amount in excess of $75,000.00; and

3. Award Plaintiff his discretionary costs in this cause and any other relief, including attorney's fees that they are legally entitled to receive.

Respectfully submitted,

BY: /s/Parke S. Morris
PARKE S. MORRIS, ESQ. #018145
Attorneys for the Plaintiff
Parke Morris & Associates
25 Dr. M. L. King Jr. Avenue, Suite 208
Memphis, TN 38103
Phone: (901) 244-5007
Fax: (877) 335-3424
www.parkemorris.com
parkemorris@gmail.com